1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOE HAND PROMOTIONS, INC.,

11          Plaintiff,                    No. CIV S-10-0224 GEB DAD

12      v.

13   JASON BERNARD BROWN and          FINDINGS & RECOMMENDATIONS
     LAWRENCE L. BROWN,
14   INDIVIDUALLY and d/b/a AMERICAN
     SPIRIT SPORTS BAR; and JBEEZY
15   ENTERPRISES, LLC, an unknown
     business entity d/b/a AMERICAN
16   SPIRIT SPORTS BAR,

17          Defendants.
                                    /
18

19          This matter came before the court on July 2, 2010, for hearing of plaintiff's

20   motion for default judgment against defendants Jason Bernard Brown and Lawrence L. Brown,

21   Individually and d/b/a American Spirit Sports Bar; and Jbeezy Enterprises, LLC, an unknown

22   business entity d/b/a American Spirit Sports Bar.  (Doc. No. 12).  Attorney Lyle Solomon

23   appeared specially for Thomas P. Riley on behalf of plaintiff.  No appearance was made by or on

24   behalf of defendants at the hearing.

25          Plaintiff's counsel indicated at the hearing that neither plaintiff nor plaintiff's

26   counsel have received any contact from defendants since the filing of the action.  The court's

1

1  docket reflects that defendants have not filed any motion for relief from the Clerk's Entry of

2  Default on April 13, 2010, nor any opposition to plaintiff's motion for entry of default judgment

3  despite being served with both.  Upon hearing argument, the court took plaintiff's motion under

4  submission.

5         For the reasons set forth below, the undersigned recommends that plaintiff's

6  motion be granted and that default judgment be entered against defendants.

7                          BACKGROUND

8         Plaintiff Joe Hand Promotions, Inc. is an international distributor of sports and

9  entertainment programming.  Defendants Jason Bernard Brown and Lawrence L. Brown operate

10  the commercial establishment called "American Spirit Sports Bar" located at 3270-3272

11  Northgate Boulevard in Sacramento, California.  By contract, plaintiff was granted the

12  proprietary rights to distribute, via closed-circuit television, the "Ultimate Fighting

13  Championship 94: St.-Pierre v. Penn 2" event (the "Program") which was telecast nationwide on

14  Saturday, January 31, 2009.  Defendants intercepted and exhibited the program in the

15  commercial establishment referred to above without authorization to do so.

16         The record reflects that service of process was effected on defendants on March

17  18, 2010, by personal service.  (Doc. Nos. 5, 6 and 7.)  After defendants failed to file an answer,

18  plaintiff filed a request for entry of default on April 9, 2010.  (Doc. No. 8.)  The Clerk entered

19  default against the defendants on April 13, 2010.  (Doc. No. 9.)  On May 22, 2010, plaintiff filed

20  its motion for default judgment with a proof of service reflecting service of the motion on

21  defendants by mail.

22                        LEGAL STANDARDS

23         Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for

24  entry of default judgment.  Upon entry of default, the complaint's factual allegations regarding

25  liability are taken as true, while allegations regarding the amount of damages must be proven.

26  Dundee Cement Co. v. Howard Pipe & Concrete Prods., 722 F.2d 1319, 1323 (7th Cir. 1983)

1   (citing Pope v. United States, 323 U.S. 1 (1944); Geddes v. United Fin. Group, 559 F.2d 557 (9th

2   Cir. 1977)); see also DirectTV v. Huynh, 503 F.3d 847, 851 (9th Cir. 2007); TeleVideo Sys., Inc.

3   v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

4            Where damages are liquidated, i.e., capable of ascertainment from definite figures

5   contained in documentary evidence or in detailed affidavits, judgment by default may be entered

6   without a damages hearing.  Dundee, 722 F.2d at 1323.  Unliquidated and punitive damages,

7   however, require "proving up" at an evidentiary hearing or through other means.  Dundee, 722

8   F.2d at 1323-24; see also James v. Frame, 6 F.3d 307, 310-11 (5th Cir. 1993).

9            Granting or denying default judgment is within the court's sound discretion.

10  Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986); Aldabe v. Aldabe, 616 F.2d. 1089,

11  1092 (9th Cir. 1980).  The court is free to consider a variety of factors in exercising its discretion.

12  Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Among the factors that may be

13  considered by the court are

14            (1) the possibility of prejudice to the plaintiff, (2) the merits of
              plaintiff's substantive claim, (3) the sufficiency of the complaint,
15            (4) the sum of money at stake in the action; (5) the possibility of a
              dispute concerning material facts; (6) whether the default was due
16            to excusable neglect, and (7) the strong policy underlying the
              Federal Rules of Civil Procedure favoring decisions on the merits.
17

18  Eitel, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice ¶ 55-05[2], at 55-24 to 55-26).

19                                    ANALYSIS

20  I.  Whether Default Judgment Should Be Entered

21            The factual allegations of plaintiff's complaint, taken as true pursuant to the entry

22  of default against defendants Jason Bernard Brown and Lawrence L. Brown, Individually and

23  d/b/a American Spirit Sports Bar; and Jbeezy Enterprises, LLC, an unknown business entity d/b/a

24  American Spirit Sports Bar establish the following circumstances:  (1) defendants are the owners,

25  operators, licensees, permitees, persons in charge, or persons with control over the commercial

26  establishment doing business as American Spirit Sports Bar in Sacramento, California; (2) by

                                            3

contract, plaintiff was granted the exclusive nationwide commercial distribution rights to distribute, via closed-circuit television, the "Ultimate Fighting Championship 94: St.-Pierre v. Penn 2" event which was telecast nationwide on Saturday, January 31, 2009; (3) pursuant to the contract, plaintiff entered into sublicensing agreements with various commercial entities throughout North America by which it granted those entities limited sublicensing rights to exhibit the Program to their patrons within their establishments; (4) as a commercial distributor of sporting events, plaintiff expended substantial monies marketing, advertising, promoting, administering, and transmitting the program to its customers; (5) with full knowledge that the program was not to be intercepted, received, and exhibited by unauthorized entities, defendants exhibited the program at the time of its transmission and did so willfully and for purposes of commercial or private gain; (6) defendant violated 47 U.S.C. § 553, et seq., which prohibits the unauthorized interception, exhibition, publication, and divulgence of programs;[1] (7) by reason of defendant's violation of § 553, plaintiff has a private right of action; (8) defendant also tortiously obtained possession of plaintiff's program and wrongfully converted it to defendants' own use and benefit; (9) by reason of defendants' tortious conversion, plaintiff is entitled to compensatory

---

[1] Although not entirely clear, it appears that the Program in question was a cable television broadcast and not a satellite television broadcast. In this regard, plaintiff's investigator indicated in her affidavit that the establishment featured a large external antenna as opposed to a satellite dish, thereby suggesting that this was pirated cable, as opposed to satellite, broadcast. (See Doc. No. 12-4.) Therefore, only 47 U.S.C. § 553 (Count Two) would be implicated and not 42 U.S.C. § 605 (Count One). See J & J Sports Productions, Inc. v. Manzano, NO. C 08-01872 RMW, 2008 WL 4542962, at *2 (N.D. Cal. Sept. 29, 2008) ("A signal pirate violates section 553 if he intercepts a cable signal, he violates section 605 if he intercepts a satellite broadcast. But he cannot violate both by a single act of interception.") Accordingly, the court will not include the §605 cause of action in recommending entry of default judgment. In this regard, many courts have held that a defendant cannot be held liable under both 47 U.S.C. §§ 553 and 605(a). J & J Sports Productions, Inc. v. Ro, No. C 09-02860 WHA, 2010 WL 668065, at *3 (N.D. Cal. Feb. 19, 2010); J & J Sports Productions, Inc. v. Prado, No. 2:07-cv-02104 GEB DAD, 2008 WL 822159, at *3 (E.D. Cal. Mar. 27, 2008); Kingvision Pay Per View, Ltd., v. Williams, 1 F. Supp. 2d 1481, 1484 (S.D. Ga. 1998). In any event, the overwhelming majority of courts have concluded that where, as here, the defendants have defaulted damages are to be awarded only under one or the other provision. Kingvision Pay Per View, Ltd., v. Backman, 102 F. Supp. 2d 1196, 1197, n. 1 (N.D. Cal. 2000) (and cases cited therein); see also J & J Sports Productions, Inc. v. Betancourt, No. 08cv937 JLS (POR), 2009 WL 3416431, at *2 (S.D. Cal. Oct. 20, 2009).

and punitive damages; (10) the interception and exhibition of the Program violated California Business & Professions Code § 17200, et seq.; and (11) by reason of defendants' violation of the Business & Professions Code § 17200, et seq., plaintiff is entitled to such remedies as restitution, disgorgement, and attorney's fees.  (Doc. No. 1 at 3-10.)

Plaintiff seeks statutory damages for the willful violation of 47 U.S.C. § 553 as alleged in Count Two and for recovery of all costs and reasonable attorney's fees.  (Id. at 6, 9.) Plaintiff also seeks compensatory and punitive damages, reasonable attorney fees, and costs of suit for defendants' tortious conversion of the Program as alleged in Count Three.  (Id. at 7, 9-10.)  Finally, plaintiff seeks restitution, declaratory relief, injunctive relief, attorney fees, and costs of suit for defendants' violation of the California Business & Professions Code as alleged in Count Four .  (Id. at 8, 10.)

Plaintiff's complaint and summons were served upon defendants Jason Bernard Brown and Lawrence L. Brown, Individually and d/b/a American Spirit Sports Bar; and Jbeezy Enterprises, LLC, an unknown business entity d/b/a American Spirit Sports Bar on March 18, 2010, by personal service.  (Doc. Nos. 5-7.)  The undersigned finds that the defendants were properly served with the complaint and that the Clerk properly entered the default of the defendants on April 13, 2010.  (Doc. No. 9.)  Defendants were also served with plaintiff's request for entry of default and application for default judgment.  (Doc. Nos. 8 and 11.)  Despite being served with process and all papers filed in connection with plaintiff's request for entry of default and motion for default judgment, defendants have failed to respond to plaintiff's complaint, request for entry of default, or motion for default judgment.  Nor did the defendants appear at the hearing on plaintiff's motion.

After weighing the Eitel factors, the undersigned finds that the material allegations of the complaint for the most part support plaintiff's claims.  Plaintiff will be prejudiced if default judgment is denied because plaintiff has no other recourse for recovery of the damages suffered due to the defendants' failure to pay for the right to exhibit the Program.

In light of the entry of default against the defendants, there is no apparent possibility of a dispute concerning the material facts underlying the action. Nor is there any indication that the defendants' default resulted from excusable neglect, as defendants were properly served with plaintiff's pleading as well as with plaintiff's request for entry of default and motion for default judgment. Defendants have had ample notice of plaintiff's intent to pursue a default judgment against them.

Although public policy generally favors the resolution of a case on its merits, the defendants' failure to make a proper appearance and defend against plaintiff's claims has made a decision on the merits impossible in this case. Because most of the Eitel factors weigh in plaintiff's favor, the undersigned, while recognizing the public policy favoring decisions on the merits, will recommend that default judgment be entered against the defaulted defendants.

II.  Terms of Judgment to Be Entered

After determining that entry of default judgment is warranted, the court must next determine the terms of the judgment. Upon consideration of all of plaintiff's briefing, the undersigned will recommend that damages be awarded but not in the amount requested.

By its motion for default judgment, plaintiff seeks a judgment in the total amount of $110,875. That sum consists of $110,000 for the violation of Title 47 and $925 for the tort of conversion. (Doc. Nos. 12-13.) The undersigned is mindful that the defendants were served with plaintiff's motion for default judgment and were thereby placed on notice of the amount sought by plaintiff. However, granting or denying default judgment is within the court's sound discretion, and one of the factors the court is free to consider in exercising its discretion is the sum of money at stake. See J & J Sports Productions, Inc. v. Betancourt, No. 08cv937 JLS (POR), 2009 WL 3416431, at *3 (S.D. Cal. Oct. 20, 2009).

The Cable and Television Consumer Protection Act provides that a plaintiff may elect to seek either actual or statutory damages. 47 U.S.C. § 553(c)(3)(A)(i) and (ii). Here, plaintiff appears to seek enhanced statutory damages. Statutory damages for each violation of the

1   Act may be awarded at a minimum of $250 and a maximum of 10,000, as the court considers

2   just.  47 U.S.C. § 553(c)(3)(A)(ii).  A maximum enhanced damages award of up to $50,000 is

3   available only where the court finds the violation to have been committed willfully and for the

4   purposes of commercial advantage or private financial gain.  47 U.S.C. § 553(c)(3)(B).  Plaintiff

5   argues that the amount requested in damages is justified here primarily because of the need to

6   deter broadcast piracy in light of the harm done to plaintiff's business as a result of such

7   activities.[2]  The court finds plaintiff's damages argument not completely persuasive in light of the

8   record before the court.

9           In this case, plaintiff's investigator has declared that during the Program broadcast

10  in question, the number of patrons inside the Sacramento establishment was between thirteen and

11  seventeen.  The investigator reported that there was no cover charge for entry on the night in

12  question.  There is no evidence before the court of any promotion by defendants that the Program

13  would be shown at the Sacramento establishment.  There is also no evidence before the court that

14  a special premium on food and drink was being charged on the night of the event.  The

15  investigator stated that the establishment had six sixty-inch flat screen televisions displaying the

16  event on the night in question ans described the establishment as " a dive bar with limited

17  windows, with little lighting."  (Doc. No. 12-4.)  Plaintiff has presented no evidence to the court

18  suggesting that the defendants are repeat broadcast piracy offenders based upon previous or

19  subsequent pirating.

20          In light of this record, and  taking into consideration that defendants were

21  displaying the pirated broadcast on six sixty-inch flat screen televisions on the night in question

22  to a total of between approximately thirteen and seventeen patrons, the court will recommend

23  that judgment be entered against the defaulted defendants and that plaintiff be awarded $3,00 in

24  ─────────────────

25      [2] Plaintiff's argument regarding the amount of statutory damages that should be awarded
    in this case is focused on the cause of action under 47 U.S.C. § 605.  The request for statutory
    damages in excess of the maximum amount allowed under § 553 appears to be based on the
26  assumption that § 605 applies here.

1    non-enhanced statutory damages pursuant to 47 U.S.C. § 553(c)(3)(A)(ii).  See J & J Sports

2    Productions, Inc. v. Cardoze, NO. C 09-05683 WHA, 2010 WL 2757106, at *3-5 (N.D. Cal. July

3    9, 2010) (awarding statutory damages of $1,000 and $250 in enhanced damages for a § 553

4    violation involving a repeat offender in a default judgment); J & J Sports Productions, Inc. v.

5    Hernandez, No. 2:09cv3389 GEB KJN, 2010 WL 1980186, at *4 (E.D. Cal. May 17, 2010)

6    (awarding the maximum $10,000 in non-enhanced statutory damages under both § 553 and §

7    605); J & J Sports Productions, Inc. v. Manzano, NO. C 08-01872 RMW, 2008 WL 4542962, at

8    *2 (N.D. Cal. Sept. 29, 2008) (in a default judgment awarding the minimum statutory damages of

9    $250 due to evidence that the defendant no longer operated the establishment and therefore a

10   larger award would have little deterrent effect)

11           In his declaration in support of the motion for default judgment, plaintiff's

12   President indicates that plaintiff also seeks the award of $925 in damages for the state law tort of

13   conversion, representing the amount defendants would have paid plaintiff to show the Program

14   lawfully according to the rate card for the event.  (Doc. No. 13.)  However, the rate card attached

15   to that declaration indicates that $925 was the amount charged for the Program to establishments

16   with audiences numbering between fifty-one and one hundred, whereas the investigator affidavit

17   in this case indicates the audience at this establishment was between thirteen and seventeen for

18   which an $800 rate would have been charged.  The court therefore concludes, and will

19   recommend, that plaintiff be awarded $800 in damages with respect to the tort of conversion.

20   See J & J Sports Productions, Inc. v. Ro, No. C 09-02860 WHA, 2010 WL 668065, at *4 (N.D.

21   Cal. Feb. 19, 2010); J & J Sports Productions, Inc. v. Montecinos, No. C 09-02604 JSW, 2010

22   WL 144817, at *7 (N.D. Cal. Jan. 11, 2010); but see J & J Sports Productions, Inc. v. Ferreyra,

23   No. C 08-128 LKK KJM, 2008 WL 4104315, at *1 (E.D. Cal. Aug. 28, 2008) ("Inasmuch as

24   plaintiff seeks statutory damages rather than actual damages, plaintiff's request for damages for

25   conversion should be denied.").

26   /////

1    Finally, although the complaint's prayer for relief as well as the motion for default

2    judgment indicates that plaintiff seeks the award of costs and attorney fees, the motion for default

3    judgment does not contain any argument in support of such a request.  Moreover, no evidence of

4    costs or attorney fees incurred was submitted to the court in connection with the pending motion.

5    Accordingly, the court will not recommend the award of costs and attorneys fees.

6                                              CONCLUSION

7        For the reasons set forth above, IT IS RECOMMENDED that:

8        1.  Plaintiff's May 22, 2010 motion for default judgment (Doc. No. 12) against

9    defendants Jason Bernard Brown and Lawrence L. Brown, Individually and d/b/a American

10   Spirit Sports Bar; and Jbeezy Enterprises, LLC, an unknown business entity d/b/a American

11   Spirit Sports Bar be granted;

12       2.  Judgment be entered against the defendants in the sum of $3,800 consisting of

13   $3,000 in statutory damages for violating 47 U.S.C. § 553 and $800 in damages for the tort of

14   conversion; and

15       3.  This case be closed.

16       These findings and recommendations will be submitted to the United States

17   District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within

18   twenty-one (21) days after these findings and recommendations are filed, any party may file

19   written objections with the court.  A document containing objections should be titled "Objections

20   to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to

21   file objections within the specified time may, under certain circumstances, waive the right to

22   appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

23   DATED: July 26, 2010.

24

25                                                    _____

26   DAD:                                             DALE A. DROZD
     Ddad1\orders.civil\joehand0224.oah.070210.mdj    UNITED STATES MAGISTRATE JUDGE